IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| PETER W. GRAHAM, | ) | CIVIL ACTION NO. 9:14- 4348-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on October 16, 2011 (protective filing date), alleging disability as of March 25, 2011 due to coronary heart disease, diabetes, low back degenerative disease, neuropathy in his hands and feet, hypertension, and sleep apnea. (R.pp. 133-136, 189, 193). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 29, 2013. (R.pp. 35-55). The ALJ thereafter denied Plaintiff's claim in a decision issued June 13, 2013. (R.pp. 17-34). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty-five (55) years old on the date he alleges he became disabled, attended school through the tenth grade (he does not have a GED) and has past relevant work experience as a sales representative/coordinator. (R.pp. 29, 38-40). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of coronary artery disease status post stent placement, degenerative disease of the lumbar spine, diabetes, and left shoulder strain, he nevertheless retained the residual functional capacity (RFC) for the performance of a restricted ranged of light work,[2] that this RFC did not preclude the performance by Plaintiff of his past relevant

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3

work as a sales coordinator, and that Plaintiff is therefore not entitled to disability benefits. (R.pp. 22, 24, 29).

Plaintiff asserts that in reaching this decision, the ALJ erred by finding the Plaintiff could perform his past relevant work or any work at the light level, by failing to give proper weight to the opinion of Plaintiff's treating physician, by failing to obtain testimony from a Vocational Expert (VE) at the hearing, and by failing to give proper weight to the Veterans Administration's Records which stated that Plaintiff was disabled and unemployable. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Record)

Plaintiff's medical records[3] show that he was seen on a regular basis both before and during the relevant time period by Dr. Amba Krishnan, a doctor of internal medicine in hematology. About a year prior to when Plaintiff alleges his impairments became disabling, Plaintiff presented to Dr. Krishnan on April 16, 2010, for a regular checkup, where he complained of numbness and

---

[3]In arguing their respective positions in this case, neither party sets forth a comprehensive review or analysis of Plaintiff's medical records in their briefs, but instead cite to and focus on those records which they believe to be the most important. Therefore, all of Plaintiff's medical records are not discussed herein. Rather, the undersigned has concentrated on records and opinions cited to by the parties as well as any additional records cited to by the ALJ in his decision as being of significance.

4

tingling in both hands. A review of Plaintiff's systems was unremarkable, while a physical examination showed that his neck was supple with no JVD, his lungs were clear, he had a regular heart rhythm, and no edema in his extremities. (R.p. 335). Plaintiff returned to see Dr. Krishnan on April 29, 2010 for a report of MRI results as well as a nerve conduction study. Dr. Krishnan advised Plaintiff that the MRI showed he had some cervical stenosis and protrusion on the disc at C5-C6, while his nerve conduction study was normal. Review of systems and a physical examination on that visit were again essentially normal. Dr. Krishnan opined that Plaintiff's complaints of numbness and tingling in his left arm were most likely neuropathy related to diabetes, and continued Plaintiff on his medications. (R.p. 336).

Plaintiff thereafter returned for a followup for his diabetes on May 20, 2010, at which time Plaintiff reported that he was taking his medications and "feeling fine," while a physical examination was again essentially normal. Dr. Krishnan diagnosed "uncontrolled diabetes", and Plaintiff was advised to come back in six weeks. (R.p. 337). Plaintiff thereafter returned to see Dr. Krishnan for his fasting blood work on July 2, 2010, at which time a review of systems and physical examination were essentially normal, with Plaintiff again reporting that he was "feeling fine". (R.p. 338).

On July 8, 2010, Dr. Krishnan noted that Plaintiff had an injection fraction of only forty-six percent (46%), and he was advised to see a cardiologist. (R.p. 339). Plaintiff was thereafter seen by Dr. Pertha Chowdury, who performed a cardiac catherization with stenting on July 21, 2010. A cardiac examination at that time showed that Plaintiff had a regular rate and rhythm. Upon discharge Plaintiff's cardiac exam again showed he had a regular rate and rhythm, and he was noted to be in no acute distress. Plaintiff was instructed to followup with Dr. Mary Lazar in two

5

weeks, or sooner should the need arise. (R.pp. 265-268). Thereafter, on August 4, 2010, Dr. Lazar wrote a "to whom it may concern" letter in which she stated that Plaintiff was clear to return to work on August 5, 2010. (R.p. 399).

As noted Plaintiff does not himself contend that his coronary artery disease, diabetes, or any of his other impairments were disabling during this period of time, or that they prevented him from working. Therefore, in order to be entitled to disability benefits, Plaintiff must show that his condition significantly worsened after March 2011, when Plaintiff alleges he became disabled. Cf. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

Plaintiff's medical records show that he continued to be followed post-stent surgery by Dr. Krishnan. However, the only record from Dr. Krishnan that post-dates Plaintiff's alleged onset of disability (March 25, 2011) is from May 27, 2011, when Plaintiff reported to Dr. Krishnan for a regular checkup. It was noted on that visit that Plaintiff was still "doing fine", while his review of systems and physical examination were again essentially normal. See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [noting importance of treating physician opinions]. Dr. Krishnan continued to assess Plaintiff with uncontrolled diabetes. (R.p. 348).

On July 22, 2011, which was now one year post his stent surgery, Plaintiff was seen by Dr. Lazar for a followup and reevaluation of his cardiac status. Dr. Lazar noted in her treatment note that Plaintiff was "now retired". Plaintiff denied any symptoms of chest pain, pressure, dizziness, fever, chills, or shortness of breath, and his physical examination was essentially normal. Dr. Lazar told Plaintiff that, while she could not predict that Plaintiff would "never" have a heart attack or other coronary event, she believed Plaintiff was at "a very low risk". Plaintiff's overall

diagnosis on that day also included osteoarthritis and degenerative disc disease (site not otherwise specified), but although Plaintiff told Dr. Lazar that he could not ambulate or perform his activities of daily living without taking Celebrex (which Dr. Lazar counseled against him doing), his generally normal physical exam included the finding that he had an intact gait. Plaintiff was advised that he did not need to return for six months. (R.pp. 364-367).

On November 9, 2011, Plaintiff had an x-ray of his left shoulder due to complaints of "sharp" pain in his left shoulder, increasing with lifting and overhead motions. This x-ray showed Plaintiff's proximal humerus to be intact and normally articulating within the glenoid, that his glenohumeral joint space was well maintained, and the acromiohumeral distance was normal. There were also no osteoarthritis changes of the acromioclavicular joint noted. (R.p. 750).

Plaintiff was thereafter seen by Dr. Joseph Salerno, a cardiologist with the VA, on November 23, 2011. Plaintiff underwent a physical examination, which was essentially normal, and also had an EKG, which showed that Plaintiff had a normal sinus rhythm, low voltage pattern, and no acute ST-T wave changes. Dr. Salerno noted that, eighteen months status post stent placement, Plaintiff continued to be "asymptomatic". (R.p. 574). Nonetheless, in a rating decision issued five (5) days later, on November 28, 2011, the VA granted Plaintiff a one hundred (100%) percent disability rating effective March 30, 2011 due to his diabetes and coronary artery disease. (R.pp. 154-166).[4] An attachment to this rating decision lists the compensation codes, but does not otherwise give the basis for the conclusion for the one hundred percent (100%) disability rating. See (R.pp. 177-179).

---

[4]Plaintiff's alleged disability onset date for purposes of his Social Security disability claim is five (5) days before that, March 25, 2011.



7

Plaintiff had an MRI of his lumbar spine on March 20, 2012, due to his continuing complaints of lower back pain. This MRI showed Plaintiff's vertebral body height and inner spaces to be intact and normally aligned, with no fracture or bony destruction demonstrated. The MRI revealed only some "minimal degenerative changes . . . with small osteophytes at L1-2 primarily", and was deemed to be a "negative examination". (R.p. 779). That same date, Plaintiff had a comprehensive consultative physical examination performed by Dr. Temisan Etikerentse. Plaintiff told Dr. Etikerentse that he suffered from coronary artery disease, diabetes, degenerative disc disease of the lower back, hypertension, sleep apnea, neuropathy in both hands and feet, and a thyroid. Specifically with respect to his coronary artery disease, Plaintiff advised Dr. Etikerentse that he saw a cardiologist every six months at the VA, and that since his heart catherization he had "been doing well", with no chest pain, and that he had not had to use nitroglycerin "at all" since that time. Plaintiff also told Dr. Etikerentse that he was being treated for hypertension and hypercholesterolemia, that he had been diagnosed with diabetes in 1998, that he took Neurontin for neuropathy in his hands and feet "without much relief", and that he had also been diagnosed with hypothyroidism as well sleep apnea, for which he used a CPAP device. Plaintiff advised that he had no significant daytime somnolence, but that he had had back pain since 2000, which was "constant" from a level 6 to a level 9 on a 10 point scale. Plaintiff complained that this pain was aggravated by prolonged sitting, standing, or bending, and radiated down his legs. Plaintiff also complained of reduced range of motion in his left shoulder, which Plaintiff said was "chronic", as well as reduced range of motion in cervical spine, tenderness in the thoracic spine, stiffness in his neck, and some mild low back tenderness. He was observed to walk slowly and exhibit some difficulty getting on the examination table.



8

Notwithstanding the severity of Plaintiff's problems as self-described, on examination Dr. Etikerentse found Plaintiff to have no JVD, HJR or bruits; while cardiovascularly he had no murmurs, gallops, or additional heart sounds. Plaintiff's grip strength was found to be 5/5 (full) in both hands, he could perform fine and gross movements without any difficulty, he had normal range of motion of his hips, knees, ankles and small joints of feet, he had no need for a cane or any assistive device to aid with ambulation, he was able to walk on his toes and heels as well as tandem walk, and he had no edema. Straight leg raising tests were positive at sixty degrees bilaterally, but Dr. Etikerentse noted on a separate orthopedic examination chart that Plaintiff had normal muscle strength and no atrophy. Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. Dr. Etikerentse assessed Plaintiff with coronary artery disease, status post stent placement, for which the Plaintiff was "doing well"; diabetes that was "fairly well controlled"; hypertension which was also "well controlled"; sleep apnea for which Plaintiff used a CPAP; neuropathy for which Plaintiff was on Neurontin; and hyperthyroidism which was "well controlled". See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]. Dr. Etikerentse believed Plaintiff's most "self-limiting issue" was his degenerative disc disease, since he complained of problems with prolonged standing, bending, lifting and stooping. With respect to Plaintiff's complaints of reduced range of motion in his left shoulder, Dr. Etikerentse believed Plaintiff would benefit from an MRI. (R.pp. 773-778).

The following month, state agency physician Dr. Cleve Hutson reviewed Plaintiff's medical records on April 5, 2012, and opined that Plaintiff had the RFC for light work with the

ability to stand and/or walk (with normal breaks) for a total of about six hours in an eight hour work day, sit (with normal breaks) for a total of about six hours in an eight hour work day, that he had an unlimited ability to push and/or pull within the light category, that he could frequently climb ramps/stairs, occasionally stoop, kneel, crouch and crawl, that he was "unlimited" in his ability to balance, but that he should never climb ladders/ropes/scaffolds. Plaintiff further had no limitations in his fine and gross manipulation, although he was limited in his ability to reach overhead on the left. Dr. Hutson found that Plaintiff should avoid even moderate exposure to hazards such as machinery and heights, but that he had no environmental limitations. (R.pp. 56-64). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On May 7, 2012, Dr. Henry Bowens, a VA primary care physician, provided Plaintiff with a motor vehicle disability form. (R.p. 794).

On July 5, 2012, state agency physician Dr. William Cain reviewed Plaintiff's medical records and reached the same conclusions with respect to Plaintiff's RFC and limitations as had Dr. Hutson. As part of this assessment, Dr. Cain even found that Plaintiff's diabetes was a non-severe impairment. (R.pp. 69-77).

Plaintiff returned to see Dr. Salerno on July 19, 2012 for a "routine reevaluation". Dr. Salerno noted that Plaintiff had had no hospitalizations or surgeries, no recurrence of his angina, and that he was exercising on a regular basis. Plaintiff's physical examination was again essentially normal, although Plaintiff was noted to have an increased risk for recurrent disease in light of his hypertension, diabetes and hyperlipidemia. (R.p. 884).

Plaintiff was thereafter seen by Dr. Bowens on August 31, 2012 for a routine followup. Plaintiff reported no surgeries, procedures, or hospitalizations outside the VA since his last appointment, and on examination Dr. Bowens' only positive finding was "musculoskeletal" with a notation for intermittent cervical spine pain. Otherwise, Plaintiff was found to be in no acute distress, with a regular heart rate and rhythm with no murmurs, gallops or rubs. (R.pp. 836-837).

Plaintiff went to see Dr. James DeTorre, a VA orthopedic surgeon, on October 17, 2012 for a consult and evaluation of his complaints of left shoulder pain. Plaintiff told Dr. DeTorre that he had had intermittent pain in his left shoulder for about two years, worse with certain motions. He denied any radicular pain, numbness, or tingling, and advised that he had had a cortisone shot about two years ago, which had helped him for "several months". On examination Dr. DeTorre (or his Physician's Assistant, Eric Tupis, the record is not clear) found no swelling or deformity in the left shoulder, and that Plaintiff's strength was "intact". An x-ray of Plaintiff's left shoulder also did not show any abnormalities, while an MRI showed marked tendonits and a "partial" tear of the rotator cuff with a "probable" SLAP tear. Plaintiff was assessed with left shoulder pain, and it was recommended that he have a cortisone injection, which he did. Plaintiff was advised that he could return in three to four months for a repeat injection "if needed". (R.pp. 833-835).

Plaintiff thereafter returned to the orthopedic clinic on January 17, 2013 for a followup, where he was seen by Dr. Abigail Gass. Dr. Gass noted that Plaintiff had received a cortisone injection on his last visit, which had improved his symptoms, but that Plaintiff complained that his pain was starting to return, mostly when reaching behind him such as when putting his arm on a cushion on the couch. Dr. Gass also noted that Plaintiff was asking about an ambulatory traction belt and wondering if this would be helpful for his degenerative disc disease. Dr. Gass noted

11

that an MRI from May 2009 (2 years before Plaintiff alleges he became disabled) had shown that Plaintiff had degenerative changes at multiple levels, but with no significant central canal or neuroforaminal stenosis and no disc herniation. That MRI had also shown only "mild" stenosis of the neuroformaina on the right side at L3-L4, with a narrowing of the intervertebral disc from L1-L3. On examination Dr. Gass found only "mild atrophy" of the left deltoid shoulder muscle compared to the right, with Plaintiff complaining of pain on forward flexion abduction, at internal rotation. Plaintiff's right shoulder had full range of motion. Dr. Gass noted that while Plaintiff was not a surgical candidate at that time, he had received two cortisone injections in the past, the most recent in October 2012. She recommended that Plaintiff continue with "conservative" management and home physical therapy. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability]. Dr. Gass then discharged Plaintiff from any further care by the orthopedic clinic, advising him that he should pursue any followup as needed with his primary care physician. (R.pp. 862-864).

Plaintiff then returned to see Dr. Salerno on February 21, 2013. Dr. Salerno noted that Plaintiff was not exercising as vigorously as he had been due to complaints of hip pain, and advised him to use an exercise bike and do aerobics in a swimming pool, which would be good exercises for him. (R.pp. 853-854).

On April 30, 2013, Dr. Bowens completed an Ability to do Work Related Activities (physical) form in which he opined that Plaintiff could perform work at a less than sedentary level,[5]

---

[5]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and
(continued...)



including that he could stand and walk (with normal breaks) for less than two hours, sit (with normal breaks) during an eight hour work day about three hours, that Plaintiff would frequently have to change positions and walk around, and would have to be able to shift at will from sitting or standing/walking. Her further opined that Plaintiff would need to lie down about every ninety minutes during a work shift, that he could occasionally twist, stoop and climb stairs, but could never crouch or climb ladders, that he could never reach, and could only perform fine and gross manipulation with the right hand. He opined that Plaintiff should also avoid all exposure to extremes of temperature and to poor environmental conditions or hazards such as machinery and heights, and even moderate exposure to humidity and noise. Dr. Bowens also opined that Plaintiff would be absent from work more than three times a month due to his condition, which he attributed to Plaintiff's coronary artery disease, chronic low back pain and degenerative joint disease of the spine, and left shoulder pain. Dr. Bowens stated that the extent of limitation set forth by him on this form had existed since January 2012. (R.pp. 871-874).

During a visit to the VA on November 8, 2013, Plaintiff was seen by Shelley Green (apparently a nurse), who noted that Plaintiff was complaining of pain at a level of 6 on a 10 point scale, chiefly in his back. Plaintiff advised that he had no identifying "triggers", but that medications made his pain better. (R.pp. 828-830).

After a review of this medical evidence and consideration of the subjective testimony from the hearing, the ALJ determined that Plaintiff's severe impairments of coronary artery disease status post stent placement, degenerative disc disease of the lumbar spine, diabetes, and left shoulder

---

[5](...continued)
other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



strain[6] restricted Plaintiff to performing light work with the ability to stand, walk, and sit for six

hours each in an eight hour work day; and further limited to frequently climbing ramps and stairs;

occasionally stooping, kneeling, crouching, crawling, and reaching overhead with the left upper

extremity; and never climbing ladders/ropes or scaffolds. (R.pp. 22, 24).

## II.

### (RFC Determination)

Plaintiff initially complains that the ALJ committed reversible error in finding that

he could perform his past relevant work as a sales coordinator, a job classified by the Dictionary of

Occupational Titles (DOT) as a light work level position; see DOT No. 259.357-022 [7]; or indeed any

light work activity. However, a careful review of the ALJ's analysis and findings fails to substantiate

Plaintiff's claim of an improper RFC analysis.

RFC is defined as "the most [a claimant] can still do despite [the claimant's]

limitations." 20 C.F.R. § 404.1545(a)(1). In SSR 96-8p, RFC is defined as a function-by-function

assessment of an individual's physical and mental capacities to do sustained, work-related physical

and mental activities in a work setting on a regular and continuing basis of eight hours per day, five

days per week, or the equivalent. SSR 96-8p, 1996 WL 374184. An RFC "assessment must include

---

[6]The ALJ determined that Plaintiff's other complaints of hypertension, hyperlipidemia, hypothyroidism, and diabetic neuropathy were well controlled with medication and were therefore "non-severe" impairments. (R.p. 23).

[7]The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998). While the parties at different points in the record and in their briefs refer to Plaintiff's title interchangeably as sales representative and/or sales coordinator, neither party contests the ALJ's use of DOT No. 259.357-022 as the comparable job in the DOT for Plaintiff's past employment.

a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7. A remand may be appropriate only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir.2015), citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). Such is not the case here. Rather, a review of the decision shows that consistent with SSR 96-8p the ALJ set forth a narrative discussion of the medical and nonmedical evidence which led him to conclude that Plaintiff had the RFC to perform the range of light work cited to in the decision, specifically noting the medical treatment Plaintiff had received, the findings from Plaintiff's examinations, and his consideration of the subjective evidence. (R.pp. 23-27). There is no error evident in this analysis. Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Hepp, 511 F.3d at 806 [Noting that the substantial evidence standard requires less that even a preponderance of the evidence].

Notably, the ALJ did not find that Plaintiff could perform a full range of light work; he found that Plaintiff had the exertional capacity for light work with *certain specified restrictions* due to his impairments. See 20 C.F.R. § 404.1545(a)(1) [defining an RFC as "the most [a claimant] can still do despite [the claimant's] limitations."]. Even so, in finding that Plaintiff's RFC was not as limiting as he claims, the ALJ noted that Plaintiff's MRIs and CT scans generally reflected

15

minimal degenerative findings; (R.pp. 750, 779, 833-835); that nerve conduction studies of Plaintiff's upper extremities were within normal limits; (R.p. 336); that he had normal grip strength and was able to perform fine and gross movements without difficulty; (R.pp. 773-778); that his EKGs have been normal while Plaintiff's coronary artery disease has been deemed asymptomatic since his stent placements; (R.pp. 348, 364-367, 399, 574, 884); that examination results from March 2012 and March 2013 show that his diabetes was under control; (R.pp. 773-778, 847, 849); and that Plaintiff is able to receive relief from his complaints of shoulder pain with cortisone injections. (R.pp. 862-864). See generally, (R.pp. 23-27).

        While Plaintiff complains that his condition is disabling, the ALJ correctly noted that there is no evidence that Plaintiff suffered from any recurring symptoms of his coronary artery disease since his stent placements and that he had even been deemed by a treating physician (Dr. Lazar) as a "low risk" for a coronary event; that his diabetes was well controlled with medication; that with respect to his degenerative disc disease the most recent x-rays of Plaintiff's lumbar spine revealed only minimal degenerative changes while an examination from March 2012 showed that Plaintiff was able to tandem walk, heel/toe walk, and squat; that Plaintiff has never been prescribed an ambulation-assisting device or recommended for back surgery; and that with respect to Plaintiff's left shoulder strain examinations showed that Plaintiff's left upper extremity strength was intact and that he had only been recommended for conservative treatment for this condition. (R.p. 27). This medical record, consisting of treatment and examination results from a variety of treating and examining physicians, provides substantial evidence to support the ALJ's RFC determination that Plaintiff can do at least light work with the limitations noted. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular



conclusion"]; see Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]; Richardson, 402, U.S. at 408 [assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].

Further, although the ALJ determined that Plaintiff's impairments were not as limiting as he claimed, it is clear in the decision that he nonetheless took into account Plaintiff's complaints of pain and limitation with prolonged standing, bending, lifting due to shoulder problems, and stooping by restricting him to light work that never required the climbing of ladders/ropes/scaffolds; only occasional stooping, kneeling, crouching, crawling, or reaching overhead with his left upper extremity; and frequently climbing ramps and stairs. (R.p. 24). These limitations account for Plaintiff's complaints of pain and limitation on movement in conjunction with the objective medical evidence (discussed supra) showing that Plaintiff could work at this level of activity, a conclusion which is also supported by the findings of the state agency medical consultants, which the ALJ accorded "significant" weight as they were generally consistent with the other evidence of record. (R.pp. 28, 56-64, 69-77). See Smith v. Schweiker, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

While Plaintiff complains that he should have been credited with more severe limitations, taking into account not just his subjective testimony as to the extent of his pain and limitation but also the opinion of Dr. Bowens (whose opinion is discussed, infra), the ALJ's job is to evaluate all of the evidence and then make a fact finding as to a claimant's RFC taking into consideration the overall limitations imposed by their impairments. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. That



17

is exactly what the ALJ did here; he evaluated the evidence of record and determined that Plaintiff's impairments, although severe, did not prevent him from performing light work with certain limitations designed to account for the effects of his medical impairments as shown and documented in the record. Santiago v. Barnhart, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005) ["There is nothing oxymoronic in finding that a plaintiff can perform a limited range of light work [where] the evidence shows that the Plaintiff can perform some, though not all, of the exertional requirements of [the light work] range"]; see also Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["...What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

The ALJ also correctly found that Plaintiff's past relevant work as performed in the general economy did not require the performance of activities beyond Plaintiff's RFC. See DOT No. 259.357-022 [Noting that position of sales representative as generally performed is designated as light work involving no climbing, balancing, stooping, kneeling, crouching or crawling; occasional reaching and fingering; and frequent handling]. If a claimant's past job does not require the claimant to perform activities in excess of the claimant's RFC, then the claimant is properly found not to be disabled. See 20 C.F.R. § § 404.1520(a)(4)(iv), 404.1560(b)(2)(3); see also Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003) ["A person qualifies as disabled, and [is] thereby eligible for [ ] benefits only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy"]. Further, since the ALJ determined that Plaintiff could perform his

18

past relevant work as a sales representative/coordinator, it was not necessary for him (as argued by the Plaintiff) to proceed to Step 5 and obtain vocational expert testimony. Cf. Arits-Flowers v. Shalala, 39 F.3d 1175, at * 2 (4th Cir. 1994) [Finding that it was not necessary for the ALJ to obtain vocational expert testimony where the ALJ found that the claimant was capable for performing her past relevant work].

In sum, after a review of the decision and the record in this case, the undersigned does not find that the ALJ conducted an improper RFC analysis, or that his decision otherwise reflects a failure to consider the effect Plaintiff's impairments had on his ability to work. Carlson, 999 F.2d at 181 ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"); Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; see also Knox v. Astrue, 327 Fed.App. 652, 657 (7th Cir. 2009) ["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Osgar v. Barnhart, No. 02–2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004). While Plaintiff obviously believes that he should have been assigned greater limitations based on his history of consistent complaints of pain, it is the job of the ALJ to evaluate the record and make findings after a review of the evidence, which is what the ALJ did in this case. The ALJ made specific findings with respect to Plaintiff's RFC and addressed what evidence those findings were based on and why, and Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit. Dyer v. Barnhart, 395 F.3d 1206, 1211



(11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C.2002).

Even assuming for purposes of further discussion that Plaintiff is correct that a different conclusion *could have* been reached based on the evidence presented, that is not a basis on which to overturn the decision. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012) [Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."].  There is nothing in the record cited and discussed hereinabove which would warrant this Court overturning the ALJ's RFC decision in this case, and this claim of error is therefore without merit. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"].

### III.

### (Treating Physician Opinion)

Plaintiff also claims the ALJ committed reversible error by failing to give proper weight to the opinion of one of his treating physicians, Dr. Henry Bowens, a VA primary care



20

physician.  Plaintiff cites to Dr. Bowens' Ability to do Work Related Activities form from April 30, 2013, in which Dr. Bowens opined that Plaintiff could perform work at a less than sedentary level with restrictions far in excess of the RFC found by the ALJ in the decision.  See (R.pp. 871-874).

The ALJ gave Dr. Bowens' opinion "little weight", finding that it was inconsistent with the treatment notes of record, including not just Plaintiff's records from the VA (where Dr. Bowens practices) but also those of the other treating and examining physicians, which show that Plaintiff's coronary artery disease and diabetes were stable, that his left shoulder pain was improved with injections, that his back pain was not severe enough to require surgery or an ambulation-assisting device, and that upon examination he was able to tandem walk, heel/toe walk, and squat. (R.p. 28).  See Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]. The ALJ further noted that Dr. Bowens' opinion was also inconsistent with the opinions of the state agency medical consultants, both of whom opined to limitations consistent with the RFC found in the decision.  Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005) [ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."].

21

After careful review of the record and decision in this case, the undersigned can find no reversible error in the ALJ's treatment of Dr. Bowens' opinion. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. Whether a claimant is disabled from all work activity is a decision reserved for the Commissioner; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; and the ALJ set forth a thorough review of the medical evidence and the generally minimal findings set forth therein in determining that Plaintiff's RFC was greater than that opined to by Dr. Bowens. Indeed, not only do the medical records and opinions of the other physicians in this case not support the degree of limitation opined to by Dr. Bowens, but Dr. Bowens' own findings from August 31, 2012 fail to support the degree of limitation noted by him in his later work activity form. See (R.pp. 836-837). Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8ʰCir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ].

The ALJ properly discounted Dr. Bowens' opinion of April 30, 2013 because it was not supported by either Dr. Bowens' own treatment records, the treatment records of the VA where

Dr. Bowens' practices, or the evidence as a whole. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. The ALJ properly considered and analyzed Dr. Bowens' opinion in conjunction with the evidence as a whole, and the decision does not reflect a failure by the ALJ to properly consider the record and evidence in this case. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; see also Guthrie, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Therefore, this argument is without merit.

### IV.

### (VA Opinion of Disability)

Plaintiff's final claim of error is that the ALJ erred in not giving proper weight to the Veteran's Administration records, which stated that he was disabled and unemployable. As support for this argument, Plaintiff notes that on November 28, 2011, the VA gave him a one hundred percent (100%) disability rating effective March 30, 2011 due to his diabetes and coronary artery disease. (R.p. 154-163).

While a VA disability determination is not binding on the SSA, Plaintiff is correct that it can nevertheless be entitled to substantial weight. See Bird v. Commissioner of Social



23

Security, 699 F.3d 337, 343-344 (4th Cir. Nov. 9, 2012) ["SSA must give substantial weight to a VA disability rating"]. However, an ALJ "may give less weight to [a] VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate". Bird, 699 F.3d at 343. Although, in doing so, it is incumbent upon the ALJ to explain his or her rationale; see SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No. 10-339, 2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761, 2010 WL 1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision]; a review of the decision here confirms that the ALJ complied with this requirement in Plaintiff's case.

The ALJ stated in his decision that he had specifically "considered the fact that the claimant was granted entitlement to 100% individual unemployability by the Department of Veteran's Affairs", but that following a "thorough review of this [VA] opinion . . . [he] accord[ed] this opinion little weight". (R.pp. 27-28). In doing so, the ALJ not only noted that the VA rating did not explain the basis for the VA's finding that Plaintiff was unemployable, but that the VA decision (which the ALJ noted is based on different guidelines, regulations, and definitions for disability findings than are followed by the SSA) was inconsistent with the substantial evidence in the case record. The ALJ then went on to specifically note that the evidence showed that Plaintiff's coronary artery disease was stable since his stent placement surgery, and that his diabetes was well

controlled with medication, medical findings inconsistent with the VA's disability finding with respect to those two impairments. Further, although not addressed by the VA in its opinion, the ALJ also noted with respect to Plaintiff's other complaints that Plaintiff was never recommended for lumbar spine surgery, that he was able to ambulate without an assistive device, and that his left shoulder strain had been treated with conservative pain management. (R.p. 28).

Therefore, the decision reflects that, in compliance with Bird, the ALJ specifically set forth the evidentiary weight given to the VA disability finding as well as his rationale for discounting that disability rating. Bird, 699 F.3d at 344 [ALJ "may give less weight to [a] VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate]; Lyall v. Chater, No. 94-2395, 1995 WL 417654 at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]. Plaintiff simply disagrees with the ALJ's findings and conclusions. That is not, however, a basis on which to reverse the ALJ's decision. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011)["Assessing the probative value of competing evidence is quintessentially the role of the fact finder"]; Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant

who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012). Therefore, this argument is without merit.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Considered under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

Bristow Marchant
United States Magistrate Judge

December ___, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

