UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Peter W. Graham, ) | Civil Action No.: 9:14-cv-04348-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Peter W. Graham ("Plaintiff"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #24, p. 26].

**Factual Findings and Procedural History**

The factual findings and medical history of Plaintiff's treatment are adequately and thoroughly set forth in the R&R. [ECF #24, pp. 3-13]. On October 16, 2011, Plaintiff filed a claim for DIB alleging a disability onset date of March 25, 2011. [ECF #16, p. 1]. The Commissioner denied his application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). [ECF #16, p. 1]. The ALJ held a hearing, and on June 13, 2013, rendered an unfavorable decision to Plaintiff, finding Plaintiff was not disabled. [ECF #16, p. 1]. The ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 25, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

. . . .

3. The claimant has the following severe impairments: coronary artery disease status post stent placement; degenerative disc disease of the lumbar spine; diabetes; and left shoulder strain (20 CFR 404.1520(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. The claimant can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. Additionally, the claimant is limited to occasionally reaching overhead with the left upper extremity.

. . . .

6. The claimant is capable of performing past relevant work as a sales coordinator. This work does not require the performance of work-related activities precluded by the

>          claimant's residual functional capacity (20 CFR 404.1565).
>
>          . . . .
>
>     7.   The claimant has not been under a disability, as defined in the
>          Social Security Act, from March 25, 2011, through the date
>          of this decision (20 CFR 404.1520(f)).

[ECF #8-2, pp. 21-30; Tr. at 23-29].

Plaintiff then filed an appeal with the Appeals Council, and the Appeals Council affirmed the decision of the ALJ. [ECF #16, p. 1]. On November 10, 2014, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #16; ECF #17; ECF #22], and the Magistrate Judge issued his R&R on December 4, 2015, recommending that the Commissioner's decision be affirmed. [ECF #24]. Plaintiff filed objections on December 29, 2015. [ECF #27]. Defendant replied to these objections on January 8, 2016. [ECF #29].

**Standard of Review**

**I.     Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the

Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.     The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R&R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court

need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. § 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his

previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## **Analysis**

In the R&R, the Magistrate Judge recommends affirming the Commissioner's decision, determining that the record contains substantial evidence to support the conclusion that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.. [ECF #24, pp. 4, 26]. Specifically, the Magistrate Judge concludes that the ALJ did not err in finding Plaintiff could perform his past relevant work, he did not conduct an improper RFC analysis, he properly considered treating physician Dr. Bowens's testimony, and he complied with the regulations in specifying why he gave less weight to the VA disability rating. [ECF #24, pp. 4-26]. Plaintiff raises several objections to the recommendations made by the Magistrate Judge in the R&R, including the recommendations regarding Plaintiff's residual functional capacity to perform light work and past relevant work, the determination that it was not necessary to have a vocational expert testify, and the determination that the Commissioner gave proper weight to the VA disability rating. [ECF #27, p. 1]. In response, Defendant filed a succinct brief after reviewing Plaintiff's objections and requested this Court adopt the Magistrate Judge's R&R. [ECF #29]. In light of Plaintiff's objections and pursuant to

28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of the Magistrate Judge's R & R. Therefore, the Court will address Plaintiff's objections in turn.

**I.     Residual Functional Capacity to Perform Light Work and Ability to Perform Past Work**

Plaintiff's first objection is two-fold in that he argues the Magistrate Judge erred in agreeing with the ALJ's determination that Plaintiff has both the residual functional capacity ("RFC") to perform light work and perform his past relevant work. [ECF #27, p. 6]. In support of Plaintiff's first argument that he did not have the RFC to perform light work, he principally relies upon the findings of Dr. Bowens, a physician at the VA clinic.[1] [ECF #27, p. 2]. Plaintiff also points to several treatment notes, scattered throughout the medical records, as evidence that Dr. Bowens's findings are supported by other medical reports. The specific references include low back pain, neck stiffness, nerve impingement, and recurrent left shoulder pain. [ECF #27, p. 3]. Plaintiff also argues that the consultative exam by Dr. Etikerentse shows he could not perform work at the light level. [ECF #27, p. 4].

Light work is defined in the Social Security regulations as follows:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Plaintiff contends that he cannot perform any type of light work, and he reports pain when standing or walking and continued left shoulder pain.

Substantial medical findings exist in the record to support the ALJ's determination that Plaintiff

---

[1] The ALJ attributed little weight to this doctor's opinion because the ALJ found it inconsistent with the doctor's treatment notes. [ECF #8-2, p. 29; Tr. at 28].

7

has the RFC to perform light work, with certain specified restrictions. [ECF #8-2, p. 25; Tr. at 24]. In reviewing the ALJ's decision, it appears that he set forth a detailed narrative explaining his reasons for this conclusion in compliance with SSR 96-8p. Within the RFC rating, the ALJ also provided detailed limits to the type of light work Plaintiff can perform. First, the ALJ considered Plaintiff's testimony at the hearing that he stopped working due to a herniated disk and fatigue attributed to his heart condition. [ECF #8-2, p. 42, Tr. at 41]. Plaintiff also testified that he suffered from back pain, neuropathy, arthritis, diabetes, and pain in his right arm. [ECF #8-2, pp. 43-45; Tr. at 42-44].

When the ALJ compared this testimony with the medical evidence, he found Plaintiff's symptoms were not as limiting as Plaintiff alleged. Instead, it appears that after Plaintiff underwent the stent placement surgery he was doing well, and his doctor cleared him to return to work in August of 2010. [ECF #8-8, p. 39; Tr. at. 399]. In fact, Dr. Joseph Salerno, a cardiologist at the VA, noted Plaintiff was "asymptomatic" eighteen months after his July 2010 stent placement. [ECF #9-1, p. 48; Tr. at 574]. Further, the ALJ noted that the records indicate Plaintiff was able to get his diabetes under control. While Plaintiff did appear to complain of constant back pain, he did not require an assistive device to walk, and the ALJ found it significant that Plaintiff's gait was normal, according to one of his physician's treatment records. [ECF #8-2, p. 27; Tr. at 26]. In those same treatment records from Dr. Etikerentse in March of 2012, Plaintiff was noted as having full grip strength in both hands, the ability to perform fine and gross movements, the ability to walk without a walking aid, walk on his toes and heels, and tandem walk. [ECF #9-3, p. 28-33; 773-778]. His left shoulder pain appeared to subside upon treatment, specifically with a cortisone injection, though after a few months, the pain returned. Still, despite his shoulder complaints, he was not recommended for surgery. [ECF #8-2, p. 27; Tr. at 26].

The ALJ considered the fact that Plaintiff was never prescribed a device to assist with walking, nor was he recommended for back surgery. In March of 2012, the treatment notes showed only minimal degenerative changes in his spine.  The ALJ also considered the fact that the records revealed he was able to exercise regularly at a brisk pace, and Dr. Salerno advised Plaintiff to use an exercise bike or exercise in a swimming pool to augment his limitations in walking long distances.  [ECF #9-4, p. 16; Tr. at 853-54].  The ALJ determined that Plaintiff had been prescribed the appropriate medications for his conditions, and that these medications had been fairly effective in controlling his symptoms.  All of this testimony, when reviewed in conjunction with the available medical records, led the ALJ to conclude that Plaintiff's complaints were not wholly credible and that Plaintiff was not as restricted in movement as he claimed.

The ALJ also considered the opinion of Dr. Bowens, the physician Plaintiff relies upon most vigorously in his objections to the Magistrate Judge's recommendation. The ALJ accorded his opinion little weight because it was inconsistent with his own treatment notes, which appeared to reflect Plaintiff's condition was stable. [ECF #8-2, p. 29; Tr. at 28].  However, Plaintiff believes that Dr. Bowens's form entitled Ability to do Work Related Activities supports a finding that Plaintiff cannot perform any light work, despite the fact that the ALJ reviewed and considered all medical evidence in the record as a whole.  The ALJ gave significant weight to the state agency medical consultants, because he felt their opinions were consistent with the other evidence in the record. [ECF # 8-2, p. 29; Tr. at 28]. In fact a review of the medical records as a whole reveals that Plaintiff's conditions or ailments did not appear to become significantly worse in March of 2011.  This Court is required to determine whether substantial evidence exists in the record to support the ALJ's findings; not whether one report from a physician should be enough to credit Plaintiff with the proffered disabling limitations. *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (explaining that when the Secretary's decision is supported by substantial evidence, the inquiry must terminate).  Here, the Court finds that there is substantial evidence within the record to support the ALJ's finding that Plaintiff can perform light work. *See Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972) (defining "substantial evidence" as that which a reasoning mind would accept as sufficient).

Similarly, Plaintiff argues that the medical records show he is unable to perform his past work as a sales representative.  In a somewhat related argument, Plaintiff suggests that the ALJ needed to discuss the specific requirements of the sales representative job in his decision, citing to *Parsons v. Apfel*, 101 F. Supp. 2d 357 (D. Md. 2000).  In *Parsons*, the District Court of Maryland considered the appeal of a claimant who suffered a heart attack and alleged he was unable to return to his salesman job. *Id.* at 361. Mr. Parsons testified that he relied on others to help him with the task of giving sales presentations at various offices, while he continued to complete the paperwork portion of the job. *Id.* at 362. Thus, in that case the court discussed a distinction in the claimant's past work and whether Mr. Parsons could perform as a "salesman" given this consultant-type arrangement. *Id.*

A claimant can be found not to be disabled under either a particularized or general inquiry of the claimant's past relevant work. *See Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995) (explaining that "past relevant work" does not necessarily mean a claimant's ability to return to a specific job); *see also Johnson v. Barnhart*, 329 F. Supp. 2d 751, 755 (W.D. Va. 2004) (explaining that under the regulations, a claimant who can perform past relevant work, either as claimant actually performed the work or as the work is generally performed in the national economy, is not disabled). Further, the regulations provide three possible tests to determine whether or not a claimant retains the capacity to perform his or her past relevant work:

> (1) whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job;
> (2) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it; and
> (3) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82-61. Under the third test, the Dictionary of Occupational Titles descriptions may be relied upon to define the job. SSR 82-61. Here, the ALJ specifically compared Plaintiff's RFC with the physical demands required of a sales representative and determined Plaintiff was able to perform this job as it is generally performed. The ALJ further cited to the Dictionary of Occupational Titles ("DOT"), which classifies Plaintiff's past work as "light-level work." [ECF #8-2, p. 30; Tr. at 29].[2] The ALJ's assessment was undoubtedly based in part upon his determination that Plaintiff's suggested limitations were not wholly credible. However, the ALJ still considered the limitations supported within Plaintiff's medical records by providing certain restrictions within the RFC on the type of light work Plaintiff could perform. The limits the ALJ included in the RFC determination would not preclude performance of Plaintiff's past relevant work. [ECF #8-2, p. 30; Tr. at 29]. Accordingly, this Court does not find that the ALJ's decision regarding past relevant work is unsupported by substantial evidence or reached by an incorrect application of the law.

## II.     Requirement of a Vocational Expert

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ was not required to seek testimony from a vocational expert to discuss Plaintiff's ability to perform past relevant work. [ECF #24, p. 19]. Specifically, Plaintiff believes that the Commissioner erred in finding that the use of a vocational expert was unnecessary in this case. [ECF #24, p. 19]. Plaintiff argues that a vocational

---

[2] As the Magistrate Judge pointed out, Plaintiff's past role as a sales coordinator is defined in the Dictionary of Occupational Titles as a light work level position. *See* DOT No. 259.357-022. *See also* 20 C.F.R. §§ 404.1520 (a)(4)(iv); 404.1560(b)(3).

expert should have been called to testify regarding Plaintiff's ability to perform his past relevant work because the Commissioner did not otherwise discuss the duties of Plaintiff's past relevant work. [ECF #27, p. 6].

The ALJ followed the five-step sequential evaluation process used to assess disability claims. 20 C.F.R. § 404.1520. At the fourth step of the analysis, the ALJ must consider whether a claimant can perform his previous work. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). A claimant bears the burden of proof during the first four steps of this inquiry. *Chater*, 65 F.3d at 1203. Until a claimant establishes a disability which prevents him from performing his past relevant work, the burden remains on the claimant. *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). The ALJ is under no obligation to elicit the testimony of a vocational expert until a claimant meets this burden. *Id.* Further, it is only after a claimant survives this stage of the analysis that, under the fifth step, the ALJ will consider "vocational factors" like age, education, and past work experience and the capability of the claimant to perform other jobs existing in significant numbers in the national economy. *Thomas,* 540 U.S. at 25. Accordingly, the regulations provide that upon a finding that a claimant has the residual functional capacity to perform past relevant work, vocational factors will not be considered. 20 C.F.R. § 404.1560.

If an ALJ determines that the claimant has the capacity to perform a past relevant job, the decision must contain the following findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62. At step four, use of the DOT is consistent with the third test for determining whether a claimant can return to his or her past relevant work. *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 420 (D. Del. 2002). Here, the ALJ concluded his analysis at the fourth step of the evaluation process because he found that

Plaintiff could perform his past relevant work, as discussed earlier in this Order. Plaintiff's objection that, because he could not perform past work, a vocational expert was required to give testimony about his limitations is unsupported by applicable legal principles. Further, the suggestion that Plaintiff's age and the transferability of his job skills should also be taken into account would only make sense had there been a finding that Plaintiff could not perform his past relevant work. This Court previously concluded that the ALJ's finding that Plaintiff could perform his past relevant work was supported by substantial evidence. Therefore, this Court finds that the testimony of a vocational expert was not required in this case. Accordingly, Plaintiff's objection is overruled.

### III.     Weight Assigned to VA's Findings

Plaintiff's final objection is that the Magistrate Judge erred in finding that the ALJ adequately considered the weight to afford the VA's findings. In *Bird v. Commissioner of Social Security Administration*, the Fourth Circuit Court of Appeals previously held that when the SSA is making a disability determination, the SSA must give substantial weight to a VA disability rating. 699 F.3d 337, 343 (4th Cir. 2012). In *Bird*, the ALJ found that the VA rating decision was not relevant to evaluate the claimant's pre-DLI (date last insured) condition because the decision was effective more than a year after the claimant's DLI. *Id.* at 343-344. The Fourth Circuit also stated, however, that due to the fact that the SSA employs different standards than the VA in evaluating disabilities, an ALJ may give less weight to a VA's disability rating when the record clearly demonstrates that such a deviation may be appropriate. *Id.* at 343.

At the hearing, Plaintiff's counsel informed the ALJ of the *Bird* decision, and provided the ALJ the citation to this case. A review of the ALJ's decision suggests that the ALJ complied with the holding in *Bird*, despite the fact that ultimately the ALJ did not come to the same conclusion as the VA in this

case. *See generally Rosales v. Colvin*, 2015 WL 9598864, *9 (Dec. 16, 2015) (indicating the need to demonstrate why a deviation from the VA opinion is appropriate when explaining that the ALJ did not discuss why or how he assigned weight to the VA rating decision). First, within his decision, the ALJ explained that he specifically considered the VA's decision that Plaintiff was entitled to 100% individual unemployability. [ECF #8-2, p. 28; Tr. at 27]. However, after analyzing Plaintiff's claims under the different guidelines of the Social Security Administration, the ALJ accorded the VA's opinion little weight for several reasons. The ALJ first noted that the VA did not explain the basis for finding that the claimant was unemployable. [ECF #8-2, p. 29; Tr. at 28]. Further, the ALJ found that the VA rating was inconsistent with other evidence within the record. The evidence the ALJ felt was inconsistent was evidence from other medical sources indicating that Plaintiff's coronary artery disease was stable after he received stent placements and his diabetes was well controlled with medication. Additionally, Plaintiff was not a recommended candidate for lumbar spine surgery, and he was able to walk without an assistive device. Finally, the ALJ noted that Plaintiff's left shoulder strain was being treated with conservative pain management.

It appears from the exhibits cited by the ALJ in discussing the VA's rating (10F and 18F-22F), that he was referring to medical records from Dr. Etikerentse and Dr. Bowens. In particular, the ALJ provided a more detailed analysis of Dr. Bowens's findings, and explained that he attributed little weight to his opinion because it was inconsistent with the presentation of the Plaintiff upon examination. [ECF #8-2, p. 29; Tr. at 28]. Thus, contrary to what Plaintiff argues in his objection, the ALJ gave several explicit reasons for discounting the rating provided by the VA. Upon review of the ALJ's decision in tandem with Plaintiff's medical records, it appears that the ALJ provided sufficient justification for his decision to deviate from the VA's rating and afford it little weight based on the

record before him. *Bird*, 699 F.3d 337, 343.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative record, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the reasons set forth in the Court's order and the Magistrate Judge's R & R, the Court overrules Plaintiff's objections [ECF #27] and adopts and incorporates by reference the R & R. [ECF #24]. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**


Florence, South Carolina                                                    s/ R. Bryan Harwell
March 8, 2016                                                               R. Bryan Harwell
                                                                            United States District Judge